*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* PORTER, Minors.

UNPUBLISHED
October 07, 2024
10:12 AM

No.   370849
Hillsdale Circuit Court
Family Division
LC No.   23-000589-NA

Before:  SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor children, SP and AP, under MCL 712A.19b(3)(b)(*i*) (parent caused physical or sexual abuse) and MCL 712A.19b(3)(k)(*ii*) (parent sexually abused the child or sibling).  For the reasons stated in this opinion, we affirm.

## I.  BACKGROUND

Respondent is the biological father of AP and SP.  In August 2023, Children's Protective Services (CPS) received a complaint with allegations that respondent sexually abused AP when she was 9 years old.  At the time of the complaint, AP, 15 years old, and SP, 16 years old, were living with their mother, who is not a respondent in this matter.  AP and SP talked with respondent sporadically and had not seen him in several years.

AP reported that respondent sexually abused her once when she was nine years old.  She came inside from playing with her sister and the child of respondent's girlfriend at the time.  When AP approached respondent to ask him a question, respondent laid AP down in his bed, removed her clothing, fondled her breasts, and penetrated her vagina with his penis.  AP sustained bruising on her arms from being pulled down.  Respondent told her not to tell anyone.  After this incident, AP continued to live with respondent for a couple weeks at a time.

Following AP's disclosure, respondent was arrested and charged with one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct.  In September 2023, the Michigan Department of Health and Human Services (DHHS) petitioned for

the trial court to take jurisdiction over the children and terminate respondent's parental rights. The children were adjudicated to be within the trial court's jurisdiction and placed with their mother.

At an adjudication hearing held in February 2024, a CPS investigator testified that respondent was charged for his conduct toward AP and had another criminal case pending for sending a picture of his penis to his niece. The CPS investigator testified that respondent had an extensive criminal history including possession of controlled substances, malicious destruction of personal property, assault and battery, domestic violence, resisting and obstructing a police officer, fleeing and eluding a police officer, larceny, and breaking and entering. Respondent also had nine previous CPS investigations. AP testified about the sexual abuse at the adjudication hearing. She also explained that she only had contact with respondent once or twice every couple of months and that she had not seen him in approximately two years. She testified that neither she nor SP had a bond with respondent.

At a dispositional hearing in April 2024, a DHHS representative testified that AP and SP did not have a bond with respondent, never requested to visit him, and wanted the termination proceedings to be over. She concluded that it was in their best interests that respondent's parental rights be terminated. The trial court ultimately terminated respondent's parental rights to both AP and SP. This appeal followed.

## II. STANDARD OF REVIEW

To terminate parental rights, a trial court must find by clear and convincing evidence a statutory ground warranting termination. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *Id*. (quotation marks and citation omitted; ellipses in original). Further, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citations omitted). Whether termination of parental rights is in a child's best interests must be established by a preponderance of evidence. *Id*. The trial court's findings and ruling that termination serves the child's best interests are also reviewed for clear error. *Id*.

## III. STATUTORY GROUNDS

Respondent does not challenge the trial court's statutory-ground or best-interest findings regarding the termination of his parental rights as to AP.[1] However, respondent argues that the doctrine of anticipatory neglect does not warrant termination of his parental rights as to SP, because there was no allegation that he sexually assaulted SP and, at the time of termination, AP had just

---

[1] Although respondent does not challenge the statutory-ground or best-interest findings regarding AP, after review of the record, we nonetheless conclude that termination of respondent's parental rights to AP was appropriate under both MCL 712A.19b(3)(b)(*i*) and (3)(k)(*ii*) and in AP's best interests.

turned 16 years old, and SP was months away from turning 17 years old.  Because we conclude that the doctrine is applicable to SP, we disagree.

Contrary to respondent's arguments on appeal, respondent's sexual abuse of AP supported termination of respondent's parental rights to both AP and SP under MCL 712A.19b(3)(b)(*i*). Termination is proper under MCL 712A.19b(3)(b)(*i*) when the trial court finds the following by clear and convincing evidence:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

This Court has permitted termination concerning multiple children when the allegations of sexual assault only involved one child.  See *In re Jenks*, 281 Mich App 514, 517-518; 760 NW2d 297 (2008).

Record evidence supports that respondent sexually assaulted SP's sister when she was nine years old; respondent does not dispute this.  The doctrine of anticipatory neglect or abuse provides that how a parent treats one child is probative of how that parent may treat other children.  *In re LaFrance*, 306 Mich App 713, 730; 858 NW2d 143 (2014).  We have cautioned against using the doctrine of anticipatory neglect in cases in which the child at issue has not been abused or neglected and is not similarly situated to the sibling who was abused or neglected.  *Id*. at 730-732.  For example, in *LaFrance*, this Court refused to apply the doctrine of anticipatory neglect to the three older siblings of a child because of the "unusual circumstances" of that case.  *Id*. at 730.  The youngest child was born severely ill and was hospitalized several times for intensive treatment. *Id*. at 715-717.  The DHHS removed all four children and the respondents' parental rights were terminated following concerns about the respondents' drug use and overall failure to care for the youngest child.  *Id*. at717.  This Court refused to apply the doctrine of anticipatory neglect to the older three children given the stark contrast between the ages and medical conditions of the older children and the youngest child.  *Id*. at 730-731.

In this case, respondent is alleged to have sexually abused one of his children through penetration.  There are no unique facts, such as the children having distinct medical needs, that would undermine the likelihood that respondent would repeat sexual abuse with SP.  Instead, AP and SP are similarly-aged teenage girls.  Accordingly, application of the doctrine of anticipatory neglect or abuse was appropriate.  The fact that respondent sexually abused AP was probative of how he might treat SP in the future.  See *id*. at 730.  Therefore, the trial court did not clearly err in determining that there is a reasonable likelihood that SP would suffer injury or abuse in the foreseeable future if placed in respondent's home.  The trial court did not err in finding that this ground for termination was established by clear and convincing evidence.

Although a trial court need only find one statutory ground to support termination, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), termination was likewise warranted under MCL 712A.19b(3)(k)(*ii*).  Under MCL 712A.19b(3)(k)(*ii*), grounds for termination exist if the

parent sexually abused the child or a sibling of the child and that sexual abuse includes "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate" and there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Respondent does not contest that his sexual abuse of AP involved penetration as contemplated by MCL 712A.19b(3)(k)(*ii*). The trial court could infer from respondent's sexual abuse of AP that a reasonable likelihood existed that respondent would treat her sister similarly if given an opportunity to do so in the future. See *LaFrance*, 306 Mich App at 730. Therefore, the trial court also did not clearly err by finding that this ground for termination was established by clear and convincing evidence.

## IV. BEST INTERESTS

Respondent also argues that the trial court erred by not considering SP's best interests individually and by not considering her placement with her mother. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When considering best interests, the focus is on the child's interests rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When deciding whether termination is in the child's best interests, the trial court "may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court can also consider the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Respondent argues that the trial court erred by failing to consider AP and SP's best interests separately. We disagree. The trial court "has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. Therefore, "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715. However, this "does not stand for the proposition that the trial court errs if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. at 716.

In *In re Olive/Metts*, 297 Mich App at 37-38, the respondent had five children, including a set of twins who were younger and of a different paternity than the other children. The twins were residing with a paternal relative during the termination proceedings. *Id*. at 43-44. The trial court terminated the respondent's parental rights following incidents of physical abuse toward the children. *Id*. at 40. This Court held that the evidence supported the trial court's determination that termination was in the best interests of the three older children. *Id*. at 43. However, this Court held that, because the trial court did not "expressly address the fact that the two youngest children were residing with a paternal relative," and did not consider the youngest children's best interests individually, reversal was warranted. *Id*. at 43-44.

Respondent argues that, like the trial court in *In re Olive/Metts*, the trial court in this case erred by not making a separate finding on SP's best interests, considering the fact that AP is 16 years old and SP is 17 years old, almost 18 years old. This argument is not persuasive.

The trial court properly considered both AP's and SP's individual best interests in reporting its findings, but it was not required to address them separately, because their best interests did not significantly differ. See *In re White*, 303 Mich App at 715-716. A preponderance of the evidence in the record supports the trial court's decision that termination served both AP's and SP's best interests. The trial court considered AP's and SP's lack of a bond to respondent and respondent's lack of parenting ability. See *In re Olive/Metts*, 297 Mich App at 41-42. Indeed, both the DHHS representative and AP testified that neither AP nor SP had a bond with respondent. They had not seen respondent in several years, did not express a desire to visit him in jail, and did not speak about him. Additionally, the trial court credited that at their ages, AP and SP expressed for themselves that they did not desire to see respondent or have a relationship with him. The trial court also considered the fact that, even if respondent was released from jail, the children would not be returned to him because of the risk of additional sexual abuse, and because of respondent's homelessness, unemployment, and extensive criminal history. See *In re Frey*, 297 Mich App at 248-249. The trial court focused on SP's best interests, rather than respondent's interest in possibly reuniting with SP in the future. See *In re Moss*, 301 Mich App at 87. Therefore, the trial court did not err by finding that termination was in SP's best interests. *In re Mota*, 334 Mich App at 320.

Finally, respondent argues that the trial court erred by failing to explicitly address SP's placement with a relative. If a minor child is in a relative placement, then the trial court must explicitly address whether termination is appropriate in light of the relative placement. *In re Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the [child's] placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

At the time of termination, SP was placed with her mother. Although a child's biological parent was previously not recognized in the definition of "relative," *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016), MCL 712A.13a has since been amended, 2022 PA 200, and now defines a "relative" as any adult "[r]elated to the child within the fifth degree by blood, marriage, or adoption . . . ." MCL 712A.13a(1)(j)(*i*). Although "within the fifth degree by blood" is not defined within the statute, a different chapter of the Probate Code of 1939, the Michigan Adoption Code, explicitly defines that phrase to include a parent. MCL 710.22(y). Accordingly, it is reasonable to conclude that "relative" under MCL 712A.13a(1)(j) now includes a biological parent.

The trial court was aware that the children were placed with their biological mother. Although the trial court did not mention SP's placement with her mother while reciting its best-interest reasoning, in finalizing its best-interest ruling, the court recognized the placement, stating: "The children shall be continued in the temporary custody of this Court remaining placement, actually, they're with their mother, they will be under the care and supervision of their mother, but they will remain in placement of their mother under the supervision of the department." Findings of fact are sufficient if it "appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further

explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted). The trial court was clearly aware that SP was placed with her biological mother when it ordered that she would remain in her mother's care following termination of respondent's parental rights. Moreover, the trial court's best-interest determination was supported by adequate factual findings. Accordingly, we conclude that appellate review would not be facilitated by requiring further explanation. Ultimately, we are not left with a definite and firm conviction that the trial court made a mistake when it found that the termination of respondent's parental rights was in the best interests of the child.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney